UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CHARLES T., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], <br><br> Defendant. | Case No.  2:20-CV-00388-DCN-REP <br><br> **REPORT AND RECOMMENDATION RE: PETITION FOR REVIEW** |

Pending is Petitioner Charles T.'s Petition for Review (Dkt. 1) and an accompanying Memorandum of Law in support of the Petition for Review (Dkt. 16) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## ADMINISTRATIVE PROCEEDINGS

Petitioner is a former United States Navy aircraft mechanic who alleges that he became disabled on April 29, 2012, at the age of 24.  AR[2] 16, 374, 406.  Petitioner first filed an application for social security disability income ("SSDI") on July 27, 2016 alleging disability due to chronic migraines, vasovagal syncope, fatigue, bilateral knee injuries, bilateral shoulder

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit.  Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

[2] Citations to "AR __" refer to the cited page of the Administrative Record (Dkt. 15).

**REPORT AND RECOMMENDATION - 1**

injuries, gastroesophageal reflux disease, hip injuries, asthma, back injuries, and arthritis. AR 123. The claim was denied initially and on reconsideration and Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). AR 159. On January 24, 2018, the claim went to a hearing before Administrative Law Judge ("ALJ") Marie Palachuk. *Id.*

On March 12, 2018, the ALJ issued a decision that was unfavorable to Petitioner. AR 159-170. Petitioner successfully appealed this decision to the Appeals Council, which remanded the case back to the ALJ to consider medical records that Petitioner submitted the day before the disability hearing and to further develop the record regarding why Petitioner did not follow prescribed treatment for his migraines. AR 179-180.

The ALJ conducted a second hearing on July 10, 2019, at which Petitioner was present and represented by counsel. AR 13. On April 22, 2019, the ALJ issued a second unfavorable decision. AR 13-33. The Appeals Council denied Petitioner's request for review, making the ALJ decision the final decision of the Commissioner of Social Security. AR 1-6.

Having exhausted his administrative remedies, Petitioner filed this case. Petitioner raises one point of error related exclusively to his mental health. Specifically, Petitioner maintains that the ALJ erred in finding that Petitioner's somatic symptoms disorder did not meet or equal Listing 12.07. Pt.'s Br. at 4, 13 (Dkt. 16).

## STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the

**REPORT AND RECOMMENDATION - 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**REPORT AND RECOMMENDATION - 3**

## THE SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable

**REPORT AND RECOMMENDATION - 4**

impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

**REPORT AND RECOMMENDATION - 5**

Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled.

## THE ALJ'S FINDINGS

The ALJ found that Petitioner suffers from the following severe physical impairments: patellofemoral syndrome (knee pain), chronic low back pain with minimal findings, vasovagal syncope, headaches, and mild asthma. AR 16. In making these findings, however, the ALJ specifically noted that she was including vasovagal syncope in this list solely to give Petitioner "the benefit of the doubt." AR 22. The ALJ highlighted that the medical expert who reviewed Petitioner's medical records found "no objective medical evidence or diagnostic testing to support" the impairment despite Petitioner having gone to multiple cardiologists. *Id.* The ALJ concluded that similar evidentiary deficiencies plagued Petitioner's reports of disabling musculoskeletal and joint pain, multiple "prostrating" migraines every week, and neurologic symptoms, such as dizziness and vertigo. AR 22-26. After carefully reviewing the record, the ALJ concluded that Petitioner had a pattern of complaints was "far in excess of the objective medical evidence" and that these complaints were sometimes "so extreme" as to be "implausible." AR 26. Physically speaking, the ALJ concluded Petitioner was able to perform a range of light work. AR 19.

Turning to Petitioner's mental impairments, the ALJ noted that Petitioner only began seeking treatment for his mental health between the two disability hearings. AR 27. Relying primarily on the psychological examiner, the ALJ found that Petitioner had the following severe mental impairments: attention deficit hyperactivity disorder, other traumatic disorder, somatic symptoms disorder, and "possible, probable" narcissistic personality disorder. AR 16, 27. The ALJ determined that these impairments affected Petitioner's ability to engage in work-related

activities in a variety of manners, including that Petitioner is limited to "simple routine, repetitive tasks and instructions," can only maintain attention and concentration on such tasks for two-hour intervals, could not perform "fast-paced" work, and could have "only brief and superficial interaction with the public" and no collaborative or teamwork interaction. AR 19. Despite these limitations, the ALJ found that Petitioner could perform a range jobs, including working as a garments sorter, a mail clerk, and a housekeeping cleaner. AR 32. The ALJ, therefore, found that Petitioner was not disabled. *Id.*

## DISCUSSION

For the purposes of this appeal, Petitioner has elected not to challenge any of the ALJ's findings regarding his physical health. Pt.'s Br. at 4, 13 (Dkt. 16). Instead, Petitioner agrees that the ALJ was correct to find he has a somatic symptoms disorder, a condition characterized by an extreme, excessive, and distressing preoccupation with physical symptoms. *Id.* at 8-13. Petitioner contends, however, that the ALJ misunderstood the seriousness of this condition and should have found the condition disabling under Listing 12.07 – the listing for somatic symptom and related disorders. *Id.* at 4, 13.

Like many of the mental health listings, Listing 12.07 requires the satisfaction of two criteria. First, a claimant must provide "medical documentation of one or more of the following:

1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;

2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or

3. Preoccupation with having or acquiring a serious illness without significant symptoms present."

**REPORT AND RECOMMENDATION - 7**

Listing 12.07(A).

Second, a claimant must show extreme limitation of one or a marked limitation of two of the "paragraph B" domains. These are four "broad" domains that an ALJ must consider when evaluating the severity of a mental health condition. 20 C.F.R. §§ 404.1520a(c). The domains are:

1. Understanding, remembering, or applying information;
2. Interacting with others;
3. Concentrating, persisting, or maintaining pace; and
4. Adapting or managing oneself.

*Id.*; *see also* Listing 12.07(B). It is the claimant's burden to show that he satisfies all of the above criteria, including showing that his functional limitations in the paragraph B domains are sufficiently grave. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The ALJ found that Petitioner had not met this burden. Specifically, the ALJ found that while Petitioner had a somatic symptoms disorder, Petitioner's mental health conditions, considered together, only caused (i) *mild* limitations in understanding, remembering, or applying information, (ii) *moderate* limitations interacting with others, (iii) *moderate* limitations with concentration, persistence, or pace, and (iv) *moderate* limitations adapting or managing oneself. AR 18. In other words, Petitioner's somatic symptoms disorder did not satisfy the paragraph B criteria for presumptive disability. *Id.* Because these findings are supported by substantial evidence, the Court must affirm the ALJ's decision. *Tackett*, 180 F.3d at 1099-1100.

   i. *Understanding, remembering, or applying information*

To support her finding that Petitioner had only mild limitations in his ability to understand, remember, and apply information, the ALJ cited to the opinions of the state agency

**REPORT AND RECOMMENDATION - 8**

psychological consultants. AR 18. Each of these consultants conducted an independent review of the record and found that Petitioner had either no limitation, or only a mild limitation, in this area. *See* Dr. Martin Seidenfeld's Assessment, AR 129, 133 (finding mild restrictions in Petitioner's activities of daily living and no limitations in understanding or memory) and Dr. Michael Dennis's Assessment, AR 145, 150 (finding no limitation in understanding, remembering, or applying information).

Petitioner contends that the ALJ should have rejected these assessments and found he had a marked limitation in this domain. Pt.'s Br. at 14 (Dkt. 16). None of the evidence Petitioner emphasizes supports, let alone compels, this conclusion. First, Petitioner highlights various evidence, including the testimony of the medical expert who appeared at the second disability hearing, to show that he was obsessed by his medical conditions and that his physical symptoms were psychogenic. *Id.* at 11-13. This evidence bolsters the ALJ's finding that Petitioner has a somatic disorder, but does not indicate whether or how this disorder impacts Petitioner's comprehension, memory, or his ability to apply information.[3]

Second, Petitioner relies on the report of the examining consultant, Dr. Marie Parkman. Dr. Parkman evaluated Petitioner on November 26, 2016, prior to the initial disability determination. AR 742-751. Notably, both state agency consultants reviewed and accepted Dr. Parkman's conclusions. AR 130, 147. It should be unsurprising, therefore, that Dr. Parkman's report aligns with, rather than contradicts, their opinions about Petitioner's mental functioning.

---

[3] The same can be said for all four paragraph B domains. Petitioner's medical history and the testimony of the medical experts shed limited light on how or to what extent Petitioner's somatic disorder impacts his social and mental functioning. It is simply not the type of clear-cut evidence that would have compelled the ALJ to reject the paragraph B findings of the reviewing and testifying experts.

**REPORT AND RECOMMENDATION - 9**

Specifically, Dr. Parkman found that Petitioner was "very bright" and had "above average intelligence that he could put to use in learning another field" where his syncope would not be an impediment. AR 750. Consistent with this conclusion, Dr. Parkman found that despite having somatic symptoms disorder, Petitioner's ability to perform both simple and repetitive tasks, as well as detailed and complex tasks, remained good. *Id.* Dr. Parkman also found that Petitioner's ability to accept instructions from a supervisor would be good. *Id.* Taken together, these findings affirm the ALJ's conclusion that Petitioner had only a mild limitation in understanding, remembering, and applying information.

The only other medical professional to evaluate Petitioner's mental functioning reached the same conclusion. *See* Dr. Nancy Winfrey's Testimony, AR 100 (confirming Petitioner had only a mild limitation in understanding, remembering, and applying information). In short, the medical evidence regarding the first paragraph B criteria was all in concert and all supported the ALJ's findings.

    ii. *Interacting with others*

In finding that Petitioner had a moderate limitation in interacting with others, the ALJ once again relied on the opinions of the state agency consultants. AR 18 (citing AR 129 and 145). The ALJ also cited the testimony of Dr. Winfrey. *Id.* (citing AR 100). As before, Petitioner has not pointed to any contrary evidence that would justify reversing the ALJ's decision as irrational under the substantial evidence standard.

Dr. Parkman, the examining doctor on whose report Petitioner relies, specifically opined that Petitioner's ability to accept instructions from a supervisor was good and his ability to interact with coworker's and the general public was also good. AR 750. If anything, this opinion is even less favorable to Petitioner than the opinions of Drs. Seidenfeld, Dennis, and

**REPORT AND RECOMMENDATION - 10**

Winfrey.  In any event, no medical professional found Petitioner has *marked* limitations in interacting with others as he asserts in this appeal.  *Compare* AR 100, 129, 145, 750 *with* Pt.'s Br. at 14 (Dkt. 16).  The ALJ reasonably concluded Petitioner had at most moderate limitations in interacting with others.

>  *iii. Concentrating, persisting, or maintaining pace*

All three doctors to rank Petitioner's functioning according to the paragraph B criteria – Drs. Seidenfeld, Dennis, and Winfrey – concluded Petitioner had only moderate limitations in concentration, persistence, or pace.  AR 129, 146, 101.  The ALJ accepted these combined opinions.  AR 18.

There was nothing irrational about this decision.  The state agency doctors on whom the ALJ relied (i) expressly reviewed and fairly summarized Dr. Parkman's report, (ii) gave the report great weight, and (iii) nevertheless found that Petitioner had only a moderate limitation in the area of concentration, persistence, and pace.  AR 129, 146.  In other words, two psychologists with expertise in reviewing social security claims determined that Dr. Parkman's report was consistent with moderation limitations in this domain.

Petitioner asks that the Court reject the ALJ's crediting of these opinions as unreasonable based on his own competing reading of Dr. Parkman's report.  Pt.'s Br. at 11 (Dkt. 16).  This is a difficult challenge on which to prevail.  To begin, Dr. Parkman did not specifically rank Petitioner's functioning in any of the paragraph B domain on the five-point scale.  Translating her opinions into such a scale, therefore, necessarily required some exercise of deference on the part of the ALJ.  The role of the Court in reviewing such decisions is "a limited one."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The question on appeal is not whether substantial evidence exists to support the claimant's preferred findings, but whether substantial evidence

**REPORT AND RECOMMENDATION - 11**

supports *the ALJ's* findings. *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). In answering this question, the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). As long as the evidence rationally supports the ALJ's conclusions, these conclusions must be affirmed. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Here, Petitioner reads Dr. Parkman's report as showing he had extreme limitations in concentration, persistence, or pace. Pt.'s Br. at 14 (Dkt. 16). The undersigned is not persuaded, however, that this is the best reading, let alone the only reasonable reading, of Dr. Parkman's opinions.

Petitioner is correct that Dr. Parkman saw his "ability to sustain effort on tasks over time" as his primary area of impairment, with Petitioner "becoming easily fatigued and having to take rests due to pain." AR 750. In addition, Dr. Parkman observed problems with distractibility during Petitioner's examination and found that Petitioner's "worry about his syncope episodes and migraines consume[d] most of his thinking during the day." AR 749-750. Dr. Parkman, however, never indicated that these issues were so extreme as to preclude all gainful activity. AR 749-750. To the contrary, Dr. Parkman affirmed that Petitioner had a "good" ability to complete detailed and complex tasks. AR 750. Dr. Parkman also found Petitioner could learn new jobs tasks quickly and efficiently. *Id.* These findings strongly indicate that Petitioner's retained at least some ability to work.

Taken as a whole, Dr. Parkman's findings regarding Petitioner's attention further bolster this conclusion. Far from finding Petitioner unable to focus long enough to do any work, Dr. Parkman determined Petitioner's ability to sustain an ordinary routine without special

**REPORT AND RECOMMENDATION - 12**

supervision was fair, his ability to maintain regular attendance was fair to poor,[4] his likelihood of emotionally deteriorating in a work environment was low, and his ability to complete a normal workday without psychiatric interruptions was fair. *Id.* These are not "extreme" findings.

At most, Dr. Parkman's report contains some language that *could* be read as endorsing marked limitations in concentration, persistence, and pace. But this language is balanced with more positive indications about Petitioner's psychological functioning. In such circumstances, the Court must defer to the ALJ's reasonable interpretation of the report. *Tommasetti*, 533 F.3d at 1038.

      *iv. Adapting or managing oneself*

As it relates to the final paragraph B domain, the ALJ found that Petitioner had only a moderate impairment. AR 18. Petitioner's does not specifically challenge this finding on appeal. See Pt.'s Br. at 14 (Dkt. 16). Nor would such a challenge have legs. In adopting this limitation, the ALJ followed Dr. Winfrey – the doctor who took the most pessimistic view of Petitioner's functioning in this area. AR 18 (relying on AR 101). Every other doctor to opine on mental health found little or no impairment in this area. *See* Dr. Parkman's Report, AR 750 (petitioner's ability to learn new job tasks quickly and efficiently was good) and the State Agency Determinations, AR 134, 146, 151 (no adaptation limitations).

---

[4] Petitioner does not challenge the ALJ's decision not to include any attendance-based restrictions in the RFC. In any event, the ALJ provided specific reasons when crafting the RFC, for giving more weight to Dr. Winfrey's framing of Petitioner's RFC than Dr. Parkman's function-by-function assessment. AR 29. Petitioner never discusses or challenges this portion of the ALJ's reasoning. Any such challenge has, therefore, been waived. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (issues which are not specifically and distinctly argued and raised in a party's opening brief are waived).

**REPORT AND RECOMMENDATION - 13**

## CONCLUSION

The ALJ's ratings of Petitioner's functioning in the four paragraph B domains were all supported by multiple, largely consistent expert opinions. In the few cases where these opinions conflicted, the ALJ always elected to credit the opinions of the testifying expert – Dr. Winfrey – even when Dr. Winfrey's opinions were more favorable to Petitioner. Petitioner has not shown any error in this reasoning or established that the opinions of the examining consultant Dr. Parkman compelled a different outcome. In these circumstances, the Court may not substitute its interpretation of the evidence for that of the ALJ's. *Tommasetti*, 533 F.3d at 1038.

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Petitioner's Petition for Review (Dkt. 1) be **DENIED**, and this action be **DISMISSED** in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: December 28, 2021

Raymond E. Patricco
U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 14**